UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

CIVIL ACTION NO. 5:10CV-00181-JHM

MARK TUNNE, *pro se*                                                          PLAINTIFF

VS.

PAUL MAYNARD HENDRICK, et al.                                    DEFENDANTS

MEMORANDUM OPINION AND ORDER

This matter is before the Court on motions by Defendants, Wayne Shelton, Laxmaiah Manchikanti, Student Loan X-Press, Paul Maynard Hendrick, Jarrod Ashley Turner, to dismiss for failure to state a claim [DN 56, DN 60, DN 63, DN 66, DN 74] and on motions by Defendants, Wayne Shelton, Student Loan X-Press, and Jarrod Ashley Turner, to strike surreplies filed by Plaintiff [DN 112, DN 113, DN 114].  These matters are ripe for decision.

I.  BACKGROUND

On October 12, 2010, Plaintiff, Mark Tunne, *pro se*, filed his original complaint.  Plaintiff is a former student at the American Justice School of Law ("AJSL"), a for-profit law school, later known as the Barkley School of Law ("BSL").  AJSL opened in the fall of 2005.  AJSL had approximately 250 students, full and part-time.  The AJSL Charter Class was scheduled to graduate in May of 2008.  The ABA Council on Law School Accreditation denied AJSL's first application for accreditation in April of 2007 and its second application for accreditation in August of 2007. On or about November 17, 2007, Thomas Osborne, a minority shareholder of AJSL, filed a derivative action  against Paul Maynard Hendrick, Dean, President, and Owner of AJSL; Jarrod Ashley Turner, Assistant Dean and Secretary of AJSL; CPA Wayne Shelton, Treasurer of AJSL and law professor.  The action alleged misconduct by Hendrick, Turner, and Shelton, involving misuse of student loan monies, misappropriation of SBA dues, kickbacks on student law books,

manipulation of student grades, and providing false information to the ABA Committee on Accreditation.  On February 18, 2008, an order was entered in that action indicating the parties had settled the action.  As a result of the settlement, Hendrick, Turner, and Shelton transferred their shares of stock to Laxmaiah Manchikanti and resigned their offices and positions with AJSL.  In March of 2008, the shareholders of the AJSL changed its name to the Barkley School of Law.  The Barkley School of Law ultimately closed in December of 2008.

On October 12, 2010, Plaintiff instituted this action against Paul Maynard Hendrick; Jarrod Ashley Turner; CPA Wayne Shelton; Thomas L. Osborne, Chairman of the AJSL Board, Owner of BSL, and a law professor; Dr. Laxmaiah Manchikanti, subsequent Owner of BSL and its chief investor; Student Loan X-Press ("SLX"), the sole, private, student loan provider to AJSL; and John and Jane Does.  In his complaint and amended complaint, Plaintiff alleges violations of various federal and state laws surrounding Defendants' alleged financial abuse and fraudulent use of students' loan proceeds and the law school's funds; mismanagement of the law school's operations; and corruption and fraud.  Specifically, Plaintiff's claims include: (1) criminal and civil violations of the Racketeering and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c); (2) wire fraud, 18 U.S.C. § 1443; (3) mail fraud, 18 U.S.C. § 1441; (4) bank fraud, 18 U.S.C. § 1344(2); (5) extortion in violation of 18 U.S.C. § 1951(a); (6) embezzlement/failure to make required disposition of property in violation of KRS § 514.070; (7) conspiracy in violation of 18 U.S.C. § 371; (8) tax fraud, 26 U.S.C. § 7206; (9) Unfair, False, Misleading and Deceptive Acts in the conduct of any trade under KRS § 367.170-175; (10) false statements to American Bar Association in violation of 18 U.S.C. § 1001; (11) negligence and gross negligence; (12) violation of the Civil Rights Act, 42 U.S.C. § 1983 and § 1985; (13) fraud; (14) conversion; (15) breach of fiduciary duty; (16) for an accounting; (17) breach of contract; (18) breach of the covenant of good faith and fair dealing; (19)

violations of the Kentucky Consumer Protection Act; (20) intentional infliction of emotional distress; and (21) assorted constitutional violations. Additionally, in his amended complaint, Plaintiff requests certification as a class action on behalf of all former students of AJSL and clarifies the relief sought.

Because Plaintiff is proceeding *in forma pauperis*, the Court reviewed the complaint and amended complaint pursuant to 28 U.S.C. § 1915(e)(2). By Memorandum Opinion and Order entered May 2, 2011, the Court dismissed Plaintiff's claims based on 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1986, and the Federal Tort Claims Act. In addition, the Court dismissed all claims asserted by Plaintiff based upon federal criminal statutes including alleged violations of 26 U.S.C. § 7206 (tax fraud), 18 U.S.C. § 371 (conspiracy to commit offense or to defraud United States); 18 U.S.C. § 1341, § 1343, and § 1344(2)(mail fraud, wire fraud, and bank fraud); 18 U.S.C. § 1512 (tampering with a witness, victim, or an informant); and 18 U.S.C. § 1951 (extortion). The Court also denied Plaintiff's request for certification as a class action.

The Court permitted Plaintiff's federal antitrust and civil RICO claims and all state law claims to proceed beyond initial review under 28 U.S.C. § 1915(e)(2). Defendants, Wayne Shelton, Laxmaiah Manchikanti, SLX, Paul Maynard Hendrick, and Jarrod Ashley Turner, have now filed motions to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(b). Additionally, Defendants, Wayne Shelton, SLX, and Jarrod Ashley Turner, filed motions to strike Plaintiff's surreplies filed in this matter. While Plaintiff attempted to contact counsel for the Defendants to request permission to file the surreplies, Plaintiff failed to obtain leave of Court to do so. In response to the motions to strike, Plaintiff filed corrected surreplies requesting leave of Court to file the tendered surreplies [DN 115, DN 116, DN 117]. Given the complicated nature of the case and given Plaintiff's *pro se* status, the Court grants Plaintiff leave to file these surreplies. Therefore,

Defendants' motions to strike the surreplies are denied.  The remainder of this Opinion will address the Defendants' motions to dismiss.

## II. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court "must construe the complaint in the light most favorable to plaintiffs, accept all well-pled factual allegations as true," League of United Latin American Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007), and determine whether the "complaint states a plausible claim for relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  Under this standard, the plaintiff must provide the grounds for his or her entitlement to relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A plaintiff satisfies this standard only when he or she "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct. . . ." Id. at 678, 679.  Instead, the allegations must "'show[ ] that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Since Plaintiff is proceeding *pro se*, the Court is mindful that *pro se* complaints are liberally construed and are held "to less stringent standards than formal pleadings drafted by lawyers." Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011).

## III.  DISCUSSION

Defendants, Shelton, Manchikanti, SLX, Hendrick, and Turner, filed motions to dismiss all claims against them for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiff did not respond to Defendant Manchikanti's motion to dismiss Plaintiff's claims based upon conversion,

breach of contract, breach of fiduciary duty, intentional infliction of emotional distress, violations of KRS § 367.080-085, KRS § 525.020, KRS § 524.040 and KRS § 524.050; state and federal anti-trust laws, and RICO claims.  Similarly, Plaintiff did not respond to the motions by Defendants, Wayne Shelton and SLX, to dismiss Plaintiff's claims based upon conversion, breach of contract, and violations of KRS § 524.020, KRS § 524.040, and KRS § 524.050.  Therefore, after examining the complaint and amended complaint under the standard set forth pursuant to Fed. R. Civ. P. 12(b)(6), the Court grants Manchikanti, Shelton, and SLX's motion to dismiss with respect to these claims.

### A.  Fraud

Fraudulent misrepresentation requires proof of six elements: "(1) that the declarant made a material representation to the plaintiff, (2) that this representation was false, (3) that the declarant knew the representation was false or made it recklessly, (4) that the declarant induced the plaintiff to act upon the misrepresentation, (5) that the plaintiff relied upon the misrepresentation, and (6) that the misrepresentation caused injury to the plaintiff."  Flegles, Inc. v. TruServ Corp., 289 S.W.3d 544, 549 (Ky. 2009) (citing United Parcel Service Co. v. Rickert, 996 S.W.2d 464, 468 (Ky. 1999)); Republic Bank & Trust Co. v. Bear Stearns & Co, Inc., 683 F.3d 239, 248 (6th Cir. 2012).

When a plaintiff pleads fraud or mistake, those claims are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "At a minimum, the Sixth Circuit requires the allegations to contain the 'time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" Our Lady of Bellefonte Hosp., Inc. v. Tri–State Physicians Network, Inc., 2007 WL 2903231, *6 (E.D. Ky. Sept.

27, 2007)(quoting <u>Coffey v. Foamex L.P.</u>, 2 F.3d 157, 161-62 (6th Cir. 1993)).  "Generalized and conclusory allegations that the Defendants' conduct was fraudulent do not satisfy Rule 9(b)." <u>Bovee v. Coopers & Lybrand C.P.A.</u>, 272 F.3d 356, 361 (6th Cir. 2001).

### 1. Wayne Shelton

In his complaint and amended complaint, Plaintiff alleges that Shelton made false, misleading reports to the ABA and that the Defendants failed to tell the Plaintiff and others the truth regarding the ABA report (Complaint ¶ 11); issued a false report to the district court regarding the financial management of the law school in a 2006 case (<u>Id.</u> ¶ 14); filed a false tax return (<u>Id.</u> at ¶ 177); filed a false statement of investment with the ABA regarding the library (<u>Id.</u> at ¶¶ 237-241); filed false statement with the ABA regarding investors (<u>Id.</u> at ¶ 338); filed a false statement for AJSL with Banterra Bank (<u>Id.</u> at ¶¶ 367-406, ¶¶ 421-424); issued false report to Osborne regarding the financial status of AJSL (<u>Id.</u> at ¶ 409-414); and advised Plaintiff and the students of the financial health of AJSL as being stable and good (<u>Id.</u> at ¶ 483). Plaintiff alleges that "CPA Shelton's representation was false and was made for the purpose of inducing Students and Tunne to become involved with AJSL and to stay with AJSL."  (<u>Id.</u> at ¶ 412; <u>see also</u> ¶ 476.) Additionally, Plaintiff alleges that the students relied upon the misrepresentations and suffered economic loss.  (<u>Id.</u> at ¶¶ 452-453, 476-477.)

Much of Plaintiff's allegations of fraud stem from representations made to third-parties such as the ABA, banks, the I.R.S., and Defendant Osborne.  While Kentucky courts have permitted plaintiffs to sue for injuries resulting from misrepresentations made to or intended for third parties, <u>Kentucky Laborers Dist. Council Health and Welfare Trust Fund v. Hill & Knowlton</u>, 24 F. Supp. 2d 755, 772 (W.D. Ky. 1998)(citing <u>Highland Motor Transfer Co. v. Heyburn Building Co.</u>, 35 S.W.2d 521, 523–24 (Ky. 1931); <u>Graham v. John R. Watts & Son</u>,  36 S.W.2d 859, 861–63 (Ky.

1931)), Kentucky law requires direct reliance by a plaintiff on the defendants' statements. Goldman Services Mechanical Contracting, Inc. v. Citizens Bank and Trust Co. of Paducah, Inc., 1993 WL 428641, *3 (6th Cir. Oct. 21, 1993)(citing Wilson v. Henry, 340 S.W.2d 449, 451 (Ky. App.1960) ("The very essence of actionable fraud or deceit is the belief and reliance upon the statements of the party who seeks to perpetrate the fraud."); Compressed Gas Corp. v. United States Steel Corp., 857 F.2d 346, 352 (6th Cir.1988)("Kentucky law requires that the party claiming fraud show that he or she relied on the alleged misrepresentation, not a third party.").  Plaintiff failed to allege direct reliance on these statements made by Shelton to third-parties; and therefore, Plaintiff's allegations of fraud set forth in the complaint and amended complaint are insufficient pursuant to Fed. R. Civ. P. 9.

In his response to Shelton's motion to dismiss, Plaintiff states that "Mr. Shelton has misrepresented, concealed, and deceived Plaintiff and other AJSL students in [November of 2007] in open public meetings about his prior knowledge of Hendrick and Turner, and their true intentions when he, along with Hendrick and Turner, falsely told Plaintiff and students there were no 'oral' contract with SLX to be the sole, exclusive, student loan lender for AJSL."  (Plaintiff's Opposition to Shelton's Motion to Dismiss at 14.)  Additionally, Plaintiff alleges that Hendrick, Turner, and Shelton also denied any wrongdoing regarding financial mismanagement, the law library, and false representations to the first and second ABA site teams.  Plaintiff maintains that these actions and representations induced Plaintiff and other students to remain at AJSL.

While *pro se* complaints are liberally construed and are held "to less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972), *pro se* complaints must also satisfy the "facial implausibility" standard articulated in Twombly and Iqbal.  Stanley v. Vining, 602 F.3d 767, 771 (6th Cir. 2010).  See also Davis v. Solis, 2011 WL 831562, *3 (M.D.

Tenn. March 3, 2011).  Furthermore, only well-pled factual allegations contained in the complaint and amended complaint are considered on motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). See Weiner v. Klais and Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997)(Sixth Circuit follows the general rule that "[m]atters outside the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss.").  Therefore, the Court will not consider the new factual allegations contained in Plaintiff's response.

Accordingly, accepting all well-pled factual allegations in the complaint and amended complaint as true, the Court finds that the Plaintiff has failed to plead sufficient facts to support a plausible claim for fraud against Shelton, and the motion by Shelton to dismiss the fraud claim is granted.

### 2.  Paul Maynard Hendrick and Jarrod Ashley Turner

In his complaint and amended complaint, Plaintiff alleges that both Hendrick and Turner made false, misleading reports to the ABA and that the Defendants failed to tell the Plaintiff and others the truth regarding the ABA report (Complaint ¶¶ 11, 193); Turner made false statements to Plaintiff personally concerning the library's readiness for ABA standards (Id. at ¶¶ 17, 19); Turner made false statements regarding students' discounts for purchasing books from Law Books for Less (Id. at ¶¶ 75, 169, );  Hendrick and Turner made false statements to the ABA regarding the financial stability of AJSL, the condition of the library, work hours of library staff, membership of the board of directors, role faculty played in school governance and development (Id. at ¶¶ 78, 237-266, 272-295, 340-343); Hendrick and Turner made false statements to Plaintiff and other students regarding their academic and professional credits (Id. at ¶¶ 91-97 );  Hendrick told Plaintiffs and other students that accreditation would be delayed 10 months and the school could then file another application in July 2008 and that they had been through all of this before when they started up Florida Coastal

8

School of Law (Id. at ¶¶ 189, 190, 191); Hendrick and Turner falsely told students they did not qualify for a one-year sabbatical (Id. at ¶ 191); Hendrick falsely represented the accreditation status of the school to the Student Bar Association Accreditation Committee (Id. at ¶333); Hendrick filed false statement with the ABA regarding investors (Id. at ¶¶ 337- 338); and Hendrick and Turner made false representations of the school's short term financial position to Osborne (Id. at ¶ 475).

As with Shelton, some of Plaintiff's allegations of fraud stem from representations made to third-parties such as the ABA, Student Bar Association Accreditation Committee, and Defendant Osborne. Plaintiff has failed to allege direct reliance on these statements made by Defendants to third-parties and, therefore, his allegations of fraud regarding these statements are insufficient pursuant to Fed. R. Civ. P. 9. See, e.g., Kentucky Laborers Dist. Council, 24 F. Supp. 2d at 772 (citing Highland Motor Transfer Co., 35 S.W.2d at 523–24 ).

Notwithstanding, the Plaintiff identifies various alleged misrepresentations made by these Defendants on which he relied. Furthermore, Plaintiff alleges that these Defendants knew the representations were false at the time they made them. For example, Plaintiff alleges that these statements were intended to give students, including him, a false time line to keep them committed to the AJSL program of education (Id. at ¶ 191) and to induce Plaintiff and other students to continue to pay tuition (Id. at ¶ 476). Additionally, Plaintiff alleges that he and the other students relied upon the misrepresentations and suffered economic loss. (Id. at ¶¶ 452-453, 476-477.) These allegations comply with the pleading requirements of Rule 9(b) and are sufficient to state a claim for fraud under Kentucky law. Therefore, Defendants Hendrick and Turner's motions to dismiss as to the claims based upon common law fraud will be denied.

### 3. Dr. Laximah Manchikanti

Plaintiff alleges that Manchikanti misrepresented and deceived Plaintiff and other AJSL

9

students on April 27, 2008 when he informed them that he had or could secure financial backers to bail out the debts left behind by the previous administration.  Plaintiff contends that Manchikanti concealed that he had no financial banks, or lending institutions, investors, or financial backers of any kind to help pay off AJSL/BSL's severe financial debts.

In order to state a claim against Manchikanti under a fraud theory, the Plaintiff must allege facts that, if established at trial, would satisfy all six elements of the tort of fraud under Kentucky law.  See Flegles, 289 S.W.3d at 549.  However, Plaintiff has failed to plead sufficient facts to support the elements of inducement, reliance, and resulting damages as a result of the statements Manchikanti allegedly made on April 27 and 28, 2008.  Manchikanti first became involved with AJSL by entering into an agreement to purchase part of the stock of the school on February 15, 2008.  The agreement was negotiated to settle a lawsuit pending in the United States District Court, Western District of Kentucky, Rust v. Hendrick, 5:07CV-191-TBR.  The record reflects that Plaintiff received no student loan funds after February 2008 and he withdrew as a student at the law school in May of 2008.  Therefore, the alleged statements by Manchikanti occurred more than four months after Plaintiff received any disbursements of student loan funds from SLX.  Therefore, Plaintiff did not rely upon any representations by Manchikanti when applying for and receiving the funds in question.  Furthermore, Plaintiff withdrew from the law school within a month of the statements in question.  For these reasons, the motion by Defendant Manchikanti to dismiss the fraud claim is granted.

### 4.  SLX

As stated above, in order to state a claim against SLX under a fraud theory, the Plaintiff must allege facts that, if established at trial, would satisfy all six elements of the tort of fraud under Kentucky law.  See Flegles, 289 S.W.3d at 549.  Plaintiff has failed to do so in his complaint and

10

amended complaint. Specifically, Plaintiff fails to allege that SLX made a material representation to the Plaintiff that was false.

In response to the motion to dismiss, Plaintiff claims that he contacted SLX prior to accepting his student loan in 2006, inquired about any complaints or investigations lodged against SLX, and was informed by customer service representative that SLX was in good standing when, according to Plaintiff, they were not since SLX had entered into settlements with state Attorneys General. Plaintiff argues that had this information been released to Plaintiff, Plaintiff would not have signed the student loan agreement and would have withdrawn from AJSL. (Plaintiff's Opposition to SLX's Motion to Dismiss at 16; Surreply at 4-5.) For the reasons discussed above, the Court will not consider the new factual allegations contained in Plaintiff's response in deciding the motion to dismiss. Weiner, 108 F.3d at 89.

Thus, accepting all well-pled factual allegations in the complaint and amended complaint as true, the Court finds that the Plaintiff has failed to plead sufficient facts to support a plausible claim for fraud against SLX. See Stanley v. Vining, 602 F.3d 767, 771 (6th Cir. 2010)(*pro se* complaints must also satisfy the "facial implausibility" standard articulated in Twombly and Iqbal.). Accordingly, the motion by Defendant Shelton to dismiss the fraud claim is granted.

### B. Negligence and Gross Negligence

In his complaint and amended complaint, Plaintiff alleges that Shelton was negligent and grossly negligent in his provision of accounting services to AJSL and Mr. Osborne. He also claims that Shelton committed professional negligence with respect to Plaintiff. (Complaint ¶¶ 425-431, 432-436, 425-436, 483-486.) Additionally, in his response to the motion to dismiss[1], Plaintiff

---

[1]As he did with the fraud claims against Shelton and SLX, Plaintiff alleges additional facts in his responses to support his claims for negligence and intentional infliction of emotional

alleges that Shelton was negligent because he did not file, register, or maintain electronic or paper accounting ledger records of all of AJSL's account receivables and payable and because he did not keep accurate tax records. (Plaintiff's Opposition to Defendant Shelton's Motion to Dismiss at 18, DN 95.) With respect to Hendrick and Turner, Plaintiff claims that they were both negligent and grossly negligent in the mishandling of all of AJSL's daily and financial operations due to their lack of experience in running a law school. (Complaint ¶ 454). Finally, Plaintiff alleges that Manchikanti was both negligent and grossly negligent in purchasing stock in AJSL, failing to assess all of AJSL true debts, and failing to report "the whole truth to Plaintiff and other students of what he knew to be true concerning the severe financial debts left behind by Hendrick, Turner, and Osborne that could never be financially paid or repaired." (Plaintiff's Opposition to Defendant Manchikanti's Motion to Dismiss at 11.)

To succeed on a claim of negligence the plaintiff must establish that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached its duty, and (3) the breach proximately caused the plaintiff's damages. Pathways, Inc. v. Hammons, 113 S.W.3d 85, 88 (Ky. 2003) (citing Mullins v. Commonwealth Life Ins. Co., 839 S.W.2d 245 (Ky. 1992)). Whether a duty exists is a question of law to be determined by the court. Id. A claim for gross negligence further requires "an element either of malice or willfulness or such an utter and wanton disregard of the rights of others as from which it may be assumed that the act was malicious or willful." Phelps v. Louisville Water Co., 103 S.W.3d 46, 51 (Ky. 2003).

Having reviewed the complaint and amended complaint, the Court finds that Plaintiff's negligence claims against the Defendants fail to state a plausible claim for relief. First, Plaintiff

---

distress against the Defendants. For the reasons discussed above, the Court will not consider the new factual allegations contained in Plaintiff's responses. See, *infra*, Section III(A).

failed to allege a specific duty owed to him by Defendants Hendrick, Turner, and Manchikanti. Additionally, when faced with the motions to dismiss, Plaintiff failed to identify the legal origin or nature of the duty owed to him by these Defendants. Second, with respect to Defendant Shelton, the majority of the alleged duties breached by Mr. Shelton were duties owed to AJSL or Defendant Osborne. Liability on the basis of negligence presupposes that the individual owed a duty to the *injured party*. With respect to Plaintiff's allegation of professional negligence by Shelton toward Plaintiff, Plaintiff provides no allegation of a contractual relationship between he and Shelton pursuant to which Shelton was to perform accounting services for Plaintiff. Absent evidence of this accountant-client relationship, Plaintiff has failed to establish a recognized duty owed to him by Shelton.

With respect to SLX, SLX provided student loans to Plaintiff pursuant to a written contract between SLX and Tunne. Plaintiff cannot state a claim for negligence because he cannot demonstrate that SLX owed any duty to him outside of its contractual loan obligations. See Mims v. Western-Southern Agency, Inc., 226 S.W.3d 833, 836 (Ky. Ct. App. 2007)(holding failure to perform a contract does not give rise to liability in tort unless plaintiff can demonstrate an independent legal duty).

Finally, there are no allegations that support any claim for gross negligence under Kentucky law against any of the Defendants, and therefore, any such claims against the Defendants are dismissed.

For these reasons, the motion by Defendants to dismiss the negligence and gross negligence claims are granted.

### C. Conversion Claims Against Hendrick and Turner

Conversion is "the wrongful exercise of dominion and control over property of another."

13

State Auto. Mut. Ins. Co. v. Chrysler Credit Corp., 792 S.W.2d 626, 627 (Ky. Ct. App. 1990).  To state a claim for conversion, it must be alleged that "'(1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.'" Meade v. Richardson Fuel, Inc., 166 S.W.3d 55, 58 (Ky. Ct. App. 2005) (quoting Kentucky Ass'n of Counties All Lines Fund Trust v. McClendon, 157 S.W.3d 626, 632 n. 12 (Ky. 2005)).

Here, Plaintiff alleges that Hendrick and Turner took students tuition and fee monies and converted them to their own use "by ignoring the program of legal education" and by failing "to develop a high quality institution."  (Complaint ¶¶ 440, 443)  In other words, Plaintiff alleges that Hendrick and Turner converted "AJSL corporate funds for [their] personal and private enrichment" and that "a small part of these funds were monies given to the AJSL by Plaintiff in the form of tuition." (Plaintiff's Opposition to Defendant Hendrick's Motion to Dismiss at 22.)  The Plaintiff's conversion claims against Hendrick and Turner fail because there is no allegation that Plaintiff had possession of the loan proceeds at the time of the conversion.  In fact, Plaintiff repeatedly notes in his complaint that AJSL collected from SLX the student loans in question and that AJSL failed to distribute the loan proceeds properly.  Therefore, AJSL would potentially have the conversion claim against Hendrick and Turner for the alleged conversion, not Plaintiff.  Additionally, in as much as Plaintiff asserts a claim for conversion based on allegations that loan proceeds earmarked for living

14

expenses were withheld from the students for sixty days in the Spring of 2007, this claim is properly asserted against AJSL who, according to Plaintiff, is the "trustee of the student's funds." (Complaint ¶ 143.)  Therefore, the motions to dismiss the conversion claims against Hendrick and Turner are granted.

### D.  Breach of Contract

Plaintiff alleges that "Hendrick, Turner, and CPA Shelton's acts constitute a breach of contract under Kentucky law." (Complaint ¶ 446.)    To recover for breach of contract under Kentucky law, a plaintiff must "show the existence and the breach of a contractually imposed duty." Lenning v. Commercial Union Ins. Co., 260 F.3d 574, 581 (6th Cir. 2001); Strong v. Louisville & Nashville R. Co., 43 S.W.2d 11, 13 (Ky. 1931).  The elements of a breach of contract are: (1) the existence of a valid contract; (2) breach of the contract; and (3) damages or loss to plaintiff.  Id. Plaintiff has not alleged that he entered into a contractual relationship with Hendrick, Turner, or Shelton.  Absent the existence of a valid contract, the motions to dismiss are granted.  Similarly, Plaintiff's claim for breach of the covenant of good faith and fair dealing is likewise dismissed because no contract existed between Hendrick, Turner, or Shelton and the Plaintiff upon which to impose the implied covenant of good faith and fair dealing.  See Farmers Bank and Trust Co. of Georgetown, Kentucky v. Willmott Hardwoods, Inc., 171 S.W.3d 4, 11 (Ky. 2005); McMullin v. McMullin, 338 S.W.3d 315, 323 (Ky. Ct. App. 2011).

### E.  Breach of Fiduciary Duty

Defendants also move to dismiss Plaintiff's claim for breach of fiduciary duty.  Kentucky law describes fiduciary duty as "one founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such

15

undertaking." Hinton Hardwoods, Inc. v. Cumberland Scrap Processors Transport LLC., 2008 WL 5429569, *6 (Ky. Ct. App. Dec. 31, 2008) (quoting Steelvest, Inc. v. Scansteel Service Center, Inc., 807 S.W.2d 476, 485 (Ky. 1991)).  In order to prevail on a claim for breach of fiduciary duty, a plaintiff must establish that (1) the defendant owes a fiduciary duty to him; (2) the defendant breached that duty; and (3) the plaintiff suffered damages as a result of the breach. Id. (citing Sparks v. Re/Max Allstar Realty, Inc., 55 S.W.3d 343, 348 n. 15 (Ky. Ct. App. 2000)).

        In the complaint, Plaintiff alleges that Hendrick, Turner, Shelton, and Manchikanti "violated their fiduciary duties to Plaintiff and more importantly to the paying students of AJSL and BSL by using deceptive and fraudulent means of enticing Plaintiff and students to pay tuition fees into a failing, mismanaged operation, with no proper notices given to the Plaintiff and students when each defendant knew that the law school was facing an upward total of more than $5 million dollars in debt that could not be cured prior to the first and second ABA site visits." (Complaint ¶ 482.) Plaintiff claims that these Defendants "owed the students a fiduciary duty on the management of student funds."  (Id. at ¶450.)  Plaintiff further alleges that payment of his tuition to AJSL qualifies him as an investor in AJSL.  (Complaint ¶ 478.)  Finally, Plaintiff asserts that Shelton violated fiduciary duties as a certified public accountant by failing to monitor, record, and advise the AJSL regarding its finances and failing to budget funds appropriately.  (Complaint ¶ 74.; Plaintiff's Opposition to Shelton's Motion to Dismiss at 18.)

        Plaintiff does not have the requisite relationship of trust and confidence with Hendrick, Turner, Shelton, and Manchikanti that gives rise to a fiduciary relationship.  See Thomas v. Nova Southeastern University, 468 Fed. Appx. 98, 100 (3rd Cir. 2012).   Plaintiff has not cited, nor has the Court found, any authority supporting the conclusion that Hendrick, Turner, Shelton, or Manchikanti owed Plaintiff a fiduciary duty under the circumstances of this case.   In fact, "the

16

student-administrator relationship is not generally a fiduciary relationship." <u>McFadyen v. Duke University</u>, 786 F. Supp. 2d 887, 986 (M.D. N.C. 2011). Furthermore, contrary to Plaintiff's suggestion, payment of tuition by a student to a private for-profit school does not transform the student into an investor or a stockholder of that corporation permitting a derivative suit for the fraudulent management of the law school. Having failed to establish a fiduciary relationship, Plaintiff has failed to state a claim for breach of a fiduciary duty. <u>Abney v. Amgen, Inc.</u>, 2005 WL 1630154, *9 (E.D. Ky. July 8, 2005). Thus, this claim is properly dismissed against Hendrick, Turner, Shelton, and Manchikanti.

Plaintiff's claim against SLX for breach of a fiduciary duty is likewise dismissed because he has not pled facts indicating the existence of a fiduciary relationship between him and SLX. Instead, the relationship between SLX and Plaintiff is a relationship between a creditor and a debtor. While Plaintiff alleges that all of SLX's transactions with Plaintiff and AJSL students constitutes a breach of their fiduciary duties, the pleadings do not allege any special circumstances or any agreement which establishes a fiduciary relationship between SLX and Plaintiff. The creditor-debtor relationship is generally not fiduciary in nature. <u>Vinson</u>, 56 Fed. Appx. 220, 223 (6th Cir. 2003); <u>In re Sallee</u>, 286 F.3d 878, 885 (6th Cir. 2002); <u>see also</u> <u>Steelvest</u>, 807 S.W.2d at 485 (noting that courts typically do not impose a fiduciary duty of disclosure on banks in debtor/creditor relationships). Thus, this claim is properly dismissed against SLX as well.

### F. Intentional Infliction of Emotional Distress

To prevail on a claim of intentional infliction of emotional distress or outrage in Kentucky, a plaintiff must show that: (1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable; (3) there is a causal connection between the conduct and the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff is severe.

Gilbert v. Barkes, 987 S.W.2d 772, 777 (Ky.1999); Kroger Co. v. Willgruber, 920 S.W.2d 61 (Ky. 1996). "A party asserting a claim for intentional infliction must allege conduct that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Prather v. Providian Nat. Bank, 2006 WL 1868335, *6 (Ky. Ct. App. July 7, 2006)(quoting Humana of Kentucky, Inc. v. Seitz, 796 S.W.2d 1, 3 (Ky. 1990)).  The level of outrage required by Kentucky courts for an intentional infliction of emotional distress claim is a high level  "For example, Kentucky courts declined to find that a nurse [who] told a patient who had just delivered a stillborn baby to 'shut up,' or a citizen who erected a billboard in his yard declaring that his neighbor was a child molester, acted outrageously, intolerably, or 'beyond all decency.'" Miller v. Reminger Co., L.P.A., 2012 WL 2050239, *5 (W.D. Ky.  June 6, 2012)(quoting Brown v. Lexington-Fayette Urban County Government Dept. , 2010 WL 1529410,* 5 (E.D. Ky. April 15, 2010).

        In the complaint and amended complaint, Plaintiff does not allege that Defendants engaged in any conduct specifically intended to cause him mental anguish.  In fact, Defendants correctly note that the complaint and amended complaint are devoid of any allegation that Plaintiff suffered severe emotional distress.  Considering the complaint and amended complaint as a whole, the Court finds that Defendants' actions do not rise to the level of outrageous conduct as defined under Kentucky law.  Thus, the motions to dismiss the intentional infliction of emotional distress claim are granted.

### G.  Claims for Violations of KRS § 524.020, KRS § 524.040, and KRS § 524.050

        Plaintiff alleges that the Defendants Hendrick and Turner violated KRS § 524.020 (bribing a witness), KRS § 524.040 (intimidating a participant in a legal process), and KRS § 524.050 (tampering with a witness) by meeting with students enrolled at AJSL in an attempt to influence the students' prospective testimony, intimidate students, and tamper with students' testimony.

(Complaint at ¶¶ 345-362.). KRS § 446.070 permits a person injured by the violation of any statute to "recover from the offender such damages as he sustained by reason of the violation . . . ."

The Court grants the Defendants' motions to dismiss these claims. Plaintiff failed to address these claims in response to the motions to dismiss. Additionally, Plaintiff failed to allege that he was one of the students who Hendrick and Turner subjected to intimidation at the alleged meetings.

### H. Section 2 of the Kentucky Constitution

In Count 58 of his complaint, Plaintiff alleges that the Defendants actions violate the due process of law secured by Section 2 of the Kentucky Constitution. "Section Two of the Kentucky Constitution . . . protects citizens from the arbitrary exercise of power over life, liberty, or property by the Commonwealth." Hummeldorf v. Hummeldorf, 616 S.W.2d 794, 797 (Ky. Ct. App. 1981). "[N]o cause of action may lie against a private individual for subjecting a citizen to arbitrary action in violation of Kentucky Constitution, Section 2." Gritton v. Disponett, 2007 WL 3407459, *12 (E.D. Ky. Nov. 14, 2007). No where in the complaint or amended complaint does Plaintiff allege that Defendants are state actors or engaged in any activity attributable to the state. Accordingly, the motions by Defendants to dismiss this claim are granted.

### I. Federal and State Antitrust Statutes

Plaintiff's complaint and amended complaint allege that the Defendants violated federal and state antitrust laws. Admittedly, Plaintiff's complaint and amended complaint are not a model of clarity. However, in reviewing these pleadings as a whole, the Court finds that Plaintiff asserts that Defendants violated Section 1 of the Sherman Act, 15 U.S.C. § 1, Section 2 of the Sherman Act, 15 U.S.C. § 2, and Kentucky's antitrust statute, KRS § 367.175. (See, e.g., Complaint at ¶¶ 31-33, 71, 100-104, 167.) Plaintiff alleges that in or around January of 2006, SLX and the Defendants entered into an agreement whereby SLX compensated them for making SLX the exclusive provider of

19

private loans to AJSL students.  While Plaintiff includes all the Defendants in this claim, the substantive allegations reflect claims against Hendrick, Turner, Osborne, and SLX.  After considering the arguments of the parties and the complaint and amended complaint, the Court dismisses the federal and state antitrust claims against Defendants Shelton and Manchikanti.

SLX litigated similar antitrust claims related to the same underlying factual allegations present in this case in Brown v. Student Loan XPress, Inc., Civil Action No. 5:11CV-00090-TBR. In that case, two former students at AJSL brought claims against AJSL and Hendrick under Section 1 and 2 of the Sherman Act, Section 3 of the Clayton Act, and Kentucky's antitrust statute, KRS § 367.175.  In Brown, as here, SLX filed a motion to dismiss the federal and state antitrust claims against it.  Examining the factual allegations in light of the case law, the district court in Brown denied SLX's motion to dismiss the claims brought pursuant to the Sherman Act and KRS § 367.175.  Having considered the arguments of the parties, and for the reasons set forth in Brown v. Student Loan XPress, Inc., 2012 WL 1029467 (W.D. Ky. March 26, 2012), the Court denies the motions by Defendants Hendrick, Turner, and SLX to dismiss the federal and state antitrust claims in the present case.  Plaintiff has alleged sufficient facts to make a violation of Section 1 and Section 2 of the Sherman Act plausible on its face. Id. at *3-5.  Additionally, in as much as Plaintiff alleges a violation of Kentucky's antitrust statute, KRS § 367.175, against Turner related to the "law books for less" conduct, the Court declines to dismiss this allegation at this time.  This claim is better considered at the summary judgment stage.

## J. RICO CLAIMS

Section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act makes it "unlawful for any person employed by or associated with any enterprise engaged in" activities affecting "interstate or foreign commerce . . .  to conduct or participate, directly or indirectly, in the

conduct of such enterprise's affairs through a pattern of racketeering activity. . . ." 18 U.S.C. § 1962(c).  In order to prove a violation of this section of the RICO Act, a plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985) (footnote omitted); see also Moon v. Harrison Piping Supply, 465 F.3d 719, 723 (6th Cir. 2006).  To plead a pattern of racketeering activity, the plaintiff must allege at least two predicate acts, although that may not be sufficient.  Estate of Wyatt v. WAMU/JP Morgan Chase Bank, 2012 WL 933289 (E.D. Mich. March 20, 2012)(citing Brown v. Cassens Transp. Co., 546 F.3d 347, 354 (6th Cir. 2008)).  "Only those acts itemized in 18 U.S.C. § 1961(1) can constitute predicate offenses for RICO violations." Frank v. D'Ambrosi, 4 F.3d 1378, 1385 (6th Cir.1993).

When pleading predicate acts of mail or wire fraud, in order to satisfy the heightened pleading requirements of Rule 9(b), "a plaintiff must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Heinrich v. Waiting Angels Adoption Services, Inc., 668 F.3d 393, 404 (6th Cir. 2012)(quoting Frank v. Dana Corp., 547 F.3d 564, 570 (6th Cir. 2008)).  "A RICO plaintiff is not required to plead or prove first-party reliance on an allegedly false statement." Id. (quoting Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 648 (2008)).  "To allege a valid RICO claim, however, a plaintiff must show not only that the predicate act was a 'but for' cause of plaintiff's injuries, but also that it was a proximate cause." Id. (citing Holmes v. Securities Investor Prot. Corp., 503 U.S. 258, 268 (1992)).  A plaintiff must show "some direct relation between the injury asserted and the injurious conduct alleged." Id.

Here, the RICO claims are found in paragraphs 72-88, 88-116, 121-125, 332-335, and 363-366 of the original complaint.  Plaintiff appears to allege as predicate acts mail and wire fraud, 18

U.S.C. §§ 1341 and 1343; bank fraud, 18 U.S.C. § 1344; witness tampering,18 U.S.C. § 1512; common law fraud; and antitrust violations.   The alleged predicate acts are legally insufficient to support Plaintiff's RICO claims.

First, the Plaintiff failed to plead the majority of the predicate acts of mail and wire fraud with the particularity required by Rule 9(b).  "Where a plaintiff makes only 'loose references' to support its allegations of mail and wire fraud, but otherwise fails to identify the parties to those transactions, circuit courts have upheld the dismissal of the RICO claims under both Rule 9(b) and RICO itself." Estate of Wyatt, 2012 WL 933289, *6 (E.D. Mich. March 20, 2012) (citing Jepson, Inc. v. Makita Corp., 34 F.3d 1321, 1328 (7th Cir. 1994) ("[W]ithout an adequately detailed description of the predicate acts of mail and wire fraud, a complaint does not provide either the defendant or the court with sufficient information to determine whether or not a pattern of racketeering activity has been established.").   A few of Plaintiff's claims related to mail and wire fraud do not even involve the use of the mails or wire to transmit the communication.  Of the predicate acts that recite a specific time, date, and content, Plaintiff fails to plead or show some direct relation between the injury asserted and the predicate act. (See, e.g., Counts 41 and 42, ABA Accreditation).  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461 (2006).  For example, Plaintiff did not suffer any direct loss as a result of Hendrick's alleged false statements to ABA consultant Bucky Askew regarding  potential letters of credit available to AJSL. (Complaint ¶ 337.)  Instead, the alleged injury suffered by Plaintiff occurred from misappropriation of student loan proceeds or from the alleged antitrust violations.  As a result, the effort to cast those allegations as a RICO predicate act fails as a matter of law.  Similarly, Plaintiff fails to plead or show some direct relation between the injury asserted

and the predicate act of obstruction of justice/witness tampering,18 U.S.C. § 1512.   (Complaint ¶125.)

Additionally, Plaintiff does not have standing to assert bank fraud as a predicate act of RICO liability.   "Only defrauded financial institutions have standing to assert bank fraud as a RICO predicate." Herrick v. Liberty League Intern., 2008 WL 2230702, *5 (S.D. Ohio 2008)(citing Ward v. Nierlich, 617 F. Supp. 2d 1226, 1234 (S.D. Fla. Mar. 28, 2008) (stating that bank fraud was not the proximate cause of the plaintiffs' injuries, and therefore, the plaintiffs lacked standing to assert bank fraud as a predicate act); Honorable v. Easy Life Real Estate System, Inc., 182 F.R.D. 553, 563 (N.D. Ill.1998) (stating that non-bank plaintiffs lacked standing because "[t]he [bank fraud] statute is intended to protect financial institutions and not those who may be derivatively affected by fraud committed upon a financial institution.")).   Moreover, even if Plaintiff could assert such a predicate act, Plaintiff fails to allege that the bank fraud in question proximately caused Plaintiff's damages. See Anza, 547 U.S. at 461; Ward, 617 F. Supp. 2d at 1234.

Finally, the predicate acts alleged in the complaint and amended complaint based solely upon common law fraud and antitrust violations fail to support the RICO claim.   As a matter of law, common law fraud and antitrust violations are not predicate acts under RICO.   See Giuliano v. Fulton, 399 F.3d 381, 388 (1st Cir. 2005); Jennings v. Emry, 910 F.2d 1434, 1438 (7th Cir. 1990).

Since none of Plaintiff's claimed predicate acts of racketeering activity have been adequately alleged, Plaintiff's federal RICO claims fail as a matter of law because Plaintiff does not establish the minimum of two predicate acts necessary to demonstrate a pattern.   Thus, Plaintiff's RICO claims are dismissed.

## IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED**:

23

(1) The motions by Defendants, Wayne Shelton, Student Loan X-Press, and Jarrod Ashley Turner, to strike surreplies filed by Plaintiff [DN 112, DN 113, DN 114] are **denied**.

(2)  The motions by Defendants, Wayne Shelton and Laxmaiah Manchikanti, to dismiss all claims asserted by Plaintiff against them for failure to state a claim [DN 56, DN 60] are **granted.** Plaintiff's claims are dismissed without prejudice.

(3) The motion by Defendants, Student Loan X-Press, Paul Maynard Hendrick, and Jarrod Ashley Turner, to dismiss for failure to state a claim [DN 63, DN 66, DN 74] is **granted in part and denied in part.**  The motions by Hendrick, Turner, and SLX to dismiss Plaintiff's claims for federal and state antitrust violations are **denied.**  The motion by Hendrick and Turner to dismiss Plaintiff's claims for common law fraud are **denied**.  All Plaintiff's remaining claims are dismissed without prejudice.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

August 24, 2012

cc: Mark Tunne, *pro se*
    counsel of record